UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LEEROY E. KRAUSE,<br><br>      Plaintiff,<br>  v.<br><br>VANCOUVER POLICE DEP'T, *et al.*,<br><br>      Defendants. | CASE NO. 3:22-cv-05204-BHS-GJL<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: October 20, 2023 |

The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge Grady J. Leupold. Presently pending before the Court is (1) a Motion for Summary Judgment submitted by Defendants Nicholaas Gillingham, Ryan Starbuck, Christopher Simmons, Travis Brown, and the Vancouver Police Department (VPD), Dkt. 45; and (2) a separate Motion for Summary Judgment submitted by Defendant American Medical Response Northwest, Inc. (AMR), Dkt. 61.

 Plaintiff LeeRoy Krause, proceeding *pro se* and currently incarcerated at the Coyote Ridge Corrections Center, brings suit against VPD, four of its officers involved with Plaintiff's arrest on October 6, 2021, and AMR, seeking money damages and injunctive relief. Dkt. 19.

REPORT AND RECOMMENDATION - 1

1  Plaintiff asserts that the officers violated his Fourth and Fifth Amendment rights when they
2  questioned him without providing *Miranda* warnings, used force to take him to the ground while
3  he was in handcuffs, and then searched his pockets after lifting him from the ground. Dkt. 19 at
4  7-15. Plaintiff further alleges Fourteenth Amendment claims against all Defendants for injecting
5  Plaintiff with a sedative against his will. Dkt. 19 at 9-10.

6       After reviewing the pleadings and relevant evidence, the Court concludes that Plaintiff's
7  claims fail because they are barred by law or because undisputed evidence shows that no
8  constitutional violation occurred during Plaintiff's arrest.

9       The Court accordingly recommends that Defendants' motions for summary judgment
10  both be **GRANTED**. The Court recommends that Plaintiff's claims against all Defendants be
11  **DISMISSED with prejudice**.

12       **I.**     **PROCEDURAL HISTORY**

13       On March 31, 2022, Plaintiff, proceeding *pro se*, filed a proposed Complaint along with
14  his Motion for Leave to Proceed *In Forma Pauperis*, alleging that Defendants violated his rights
15  by forcefully taking him down while he was in handcuffs, questioning him without reading
16  *Miranda* warnings, searching his pockets, and injecting him with a sedative against his will.
17  Dkts. 1, 8. Plaintiff filed an Amended Complaint on November 17, 2022, alleging the same core
18  constitutional violations. Dkt. 19.

19       VPD and officers Gillingham, Starbuck, Simmons, and Brown (together, the "VPD
20  Defendants") filed their Answer on February 7, 2023. Dkt. 29. After AMR failed to file an
21  answer or waive service, the Court issued an Order directing the United States Marshal to
22  personally serve upon ARM the Summons and Complaint. Dkt. 33. Plaintiff filed a Motion for
23  Default on May 10, 2023, asking the Court to grant judgment against AMR. Dkt. 35. When
24

REPORT AND RECOMMENDATION - 2

1  AMR entered an appearance and filed an Answer to the Complaint on May 26, 2023, Dkts. 38,
2  39, the Court denied Plaintiff's Motion. Dkts. 42, 44.

3  VPD Defendants filed a Motion for Summary Judgment on June 29, 2023, arguing that
4  several of Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), his
5  excessive force claim fails because officers used reasonable force and Plaintiff received no
6  injuries from the takedown, and his Fourteenth Amendment claim regarding the sedative
7  injection fails because it was administered by paramedics from AMR and the officers were
8  entitled to rely on AMR's professional medical judgment that the sedative was necessary to
9  transport Plaintiff to the hospital. Dkt. 45. AMR filed a separate Motion for Summary Judgment
10 on August 11, 2023, arguing that it cannot be held liable pursuant to § 1983 because it is not a
11 state actor. Dkt. 61. Plaintiff filed a Response to VPD Defendants' Summary Judgment Motion
12 on July 31, 2023, but never responded to AMR's motion. Dkt. 57. VPD Defendants and AMR
13 filed Reply briefs on August 1 and September 8, 2023, respectively. Dkts. 58, 63.

## II.    PLAINTIFF'S ALLEGATIONS

15 The parties agree the underlying incident in this case occurred on October 6, 2021, when
16 Defendants Gillingham, Simmons, and Starbuck (and later Brown) responded to a call for a
17 welfare check at an apartment in Vancouver, Washington, which reported that Plaintiff assaulted
18 his girlfriend. Dkt. 19 at 7; Dkt. 45 at 3. When Gillingham, Simmons, and Starbuck arrived, they
19 asked that Plaintiff come down the stairs and away from the door of the apartment, which he did.
20 Dkt. 19 at 7; Dkt. 48 at 4. While Gillingham began to question Plaintiff, Starbuck walked up the
21 stairs of the apartment to speak with Plaintiff's girlfriend. Dkt. 19 at 7; Dkt. 51 at 3; Dkt. 50 at 4.
22 When Starbuck returned, Gillingham and Simmons placed handcuffs on Plaintiff and began to
23 escort him towards Gillingham's vehicle. Dkt. 19 at 7; Dkt. 45 at 3.

Plaintiff alleges that, while being led to the vehicle, he turned towards the apartment and called to his girlfriend, and Gillingham and Simmons forcefully took him to the ground. Dkt. 19 at 7. According to Plaintiff, the takedown caused him to hit his head on the ground, suffering a bump on his head. Dkt. 19 at 7-9. Gillingham and Simmons then pulled Plaintiff up while Simmons searched Plaintiff and took his wallet, later giving it to Plaintiff's girlfriend. Dkt. 19 at 7. Gillingham and Simmons placed Plaintiff in the back of Gillingham's patrol car. *Id* at 8; Dkt. 48 at 5. Plaintiff alleges that once in the vehicle, "officers made allegations that [he] was damaging the rear passenger side door," causing them to place a hobble leg restraint on Plaintiff. Dkt. 19 at 8, Dkt. 45 at 4. Plaintiff further alleges that this restraint caused pain and the officers ignored his demands to remove it. Dkt. 19 at 8.

As the ambulance arrived on scene, Plaintiff alleges that he heard officers speak about sedating him, and that Plaintiff "told them to 'stay the fuck away from me!'" *Id.* Plaintiff alleges that Starbuck pulled him down by his hair, pushing his head and right shoulder down while Plaintiff was "forcefully and voluntary injected" with a sedative by the AMR paramedics. *Id.* Plaintiff notes that his hands and legs were already restrained and argues that, because he was "unable to hurt [himself] or anybody else," the injection was unnecessary. *Id.* at 9.

### III. DEFENDANTS' EVIDENCE

Defendants submitted a Declaration from their counsel as well as Declarations from Defendants Gillingham, Simmons, Starbuck, and Brown. Dkts. 47-51. Among the exhibits attached to the Declarations are the four officers' reports of the incident (each recorded later that same day), Plaintiff's medical records from AMR, and documents from the criminal case against and conviction of Plaintiff in *State of Washington v. LeeRoy Elijah Krause*, No. 23-1-00312-06. *Id.* Referring to these records, Defendants assert the following facts:

  Gillingham, Simmons, and Starbuck were dispatched to the apartment to conduct a welfare check when a 911 caller reported that her friend was "hiding in the residence" after having broken up with Plaintiff, and that Plaintiff had held a knife to her throat. Dkt. 45 at 3 (citing Dkt. 48 at 4). Plaintiff "was pounding on the apartment door" during the call, and the three officers noticed Plaintiff continue to do so as they approached. *Id.* While Gillingham spoke with Plaintiff at the bottom of the stairs, Starbuck interviewed Plaintiff's girlfriend and then informed Gillingham and Simmons that there was probable cause to arrest Plaintiff. *Id.*

  Gillingham and Simmons placed Plaintiff into handcuffs and, as they walked from the common area of the apartment complex to the parking lot, Plaintiff "started to throw his legs out" to stop the officers from walking him to the parking lot. *Id.* Plaintiff tried to headbutt Gillingham and continued to thrash his legs, so Gillingham and Simmons "took [Plaintiff] to the ground in order to maintain complete control of him and prevent injury to [Plaintiff] or officers, and to facilitate a safe transition to a patrol vehicle." Dkt. 45 at 3 (citing Dkt. 48 at 2; Dkt. 49 at 4). Plaintiff stopped resisting after some time and was allowed to stand up. Dkt. 45 at 3 (citing Dkt. 48 at 2). Before placing him in the back of Gillingham's patrol car, Simmons asked Plaintiff if he was hurt, and Plaintiff responded in the negative. Dkt. 49 at 4-5. Simmons did not see any visible injuries on Plaintiff and took photographs of Plaintiff "to document his lack of injuries." *Id.* These photographs show two light red abrasions on Plaintiff's forehead about the size of a quarter (one above each eye) and a smaller reddish area on Plaintiff's left cheek. *Id.* at 8-9.

  Once in the vehicle, Plaintiff "started bashing his head against the plexiglass divider which separates the passenger and driver compartment of the vehicle." Dkt. 45 at 4 (citing Dkt. 48 at 2; Dkt. 50 at 4-5; Dkt. 49 at 4-5). After hitting his head multiple times, Plaintiff began kicking the rear passenger side door, breaking a plexiglass barrier that protects the window and

REPORT AND RECOMMENDATION - 5

bending the metal bar securing it so that the window would no longer operate. Dkt. 45 at 4 (citing Dkt. 48 at 2; Dkt. 49 at 5). Defendants point to photographs of the damage, which show a bent bottom window frame and a cracked barrier, and a restitution report listing the damage as costing around $800. Dkt. 48 at 12-18; Dkt. 47 at 58. The officers placed a hobble restraint on Plaintiff's legs but he "kicked his way out of the hobble quickly," repeatedly yelled "I'm going to make you kill me," and told the officers that he would spit on them. Dkt. 45 at 4 (citing Dkt. 48 at 5). Around this time, Brown proceeded up the stairs to interview Plaintiff's girlfriend. Dkt. 51 at 3; Dkt. 48 at 5. Defendants assert that Brown was not involved with Plaintiff's arrest and detainment. Dkt. 45 at 5.[1]

Starbuck believed that it was "unsafe to drive [Plaintiff] to the jail with the extensive damage to the door" and requested that AMR respond and transport Plaintiff to the hospital. Dkt. 50 at 5; Dkt. 49 at 5. AMR records indicate that, when paramedics arrived, Plaintiff "was physically and verbally combative and made threats of harm to police and EMS." Dkt. 47 at 65; *see also* Dkt. 50 at 5. AMR decided to sedate Plaintiff, and the officers restrained Plaintiff while paramedics injected him. Dkt. 45 at 5. Gillingham, Simmons, and Starbuck each testified that they deferred to the paramedics' medical judgment, and Simmons stated that he believed their decision was reasonable "given the hostile and violent nature of [Plaintiff's] behavior while handcuffed in the patrol car." Dkt. 49 at 3; Dkt. 48 at 3; Dkt. 50 at 2.

AMR transported Plaintiff to the hospital where he was evaluated, released, and taken to jail. Dkt. 45 at 5. Gillingham saw that Plaintiff "had a small knot on his head from hitting it on the patrol car divider" and took a photograph of the injury, which AMR recorded as a "nickel

---

[1] The officers' reports indicate that Brown arrived when Plaintiff was speaking with officers and not yet in handcuffs. Dkt. 51 at 3. Brown observed Plaintiff's arrest and transport to Gillingham's vehicle but did not observe AMR's sedation of Plaintiff, as this occurred while Brown was inside the apartment. Dkt. 48 at 5; Dkt. 50 at 5.

REPORT AND RECOMMENDATION - 6

sized abrasion and swelling to center of forehead along hairline." Dkt. 48 at 5; Dkt. 47 at 65. Plaintiff accepted a plea bargain on May 18, 2022, and was convicted of Criminal Mischief, Malicious Mischief, Assault, and Violation of a No-Contact Order. Dkt. 45 at 5 (citing Dkt. 47 at 4-56). In doing so, Plaintiff admitted that he "knowingly and maliciously caused physical damage to … a patrol vehicle," and knowingly violated a restraining order prohibiting him from having contact with his girlfriend. Dkt. 47 at 16-17.

### IV. DISCUSSION

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the material facts before the court and the moving party is entitled to judgment as a matter of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990). Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e).

Where there is a complete failure of proof concerning an essential element of the non-moving party's case on which the nonmoving party has the burden of proof, all other facts are

1 rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*

2 *Corp.*, 477 U.S. at 323; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986) ("the judge

3 must view the evidence presented through the prism of the substantive evidentiary burden").

4 However, when presented with a motion for summary judgment, the court shall review the

5 pleadings and evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S.

6 at 255 (citation omitted), and "a pro se complaint will be liberally construed . . . " *Pena v.*

7 *Gardner,* 976 F.2d 469, 471 (9th Cir. 1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))

8 (other citation omitted).

9    The opposing party cannot rest solely on its pleadings but must produce significant,

10 probative evidence in the form of affidavits, and/or admissible discovery material that would

11 allow a reasonable jury to find in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S.

12 574, n.11; *Anderson*, 477 U.S. at 249-50. In other words, the purpose of summary judgment "is

13 not to replace conclusory allegations of the complaint or answer with conclusory allegations of

14 an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). However,

15 weighing of evidence and drawing legitimate inferences from facts are jury functions, and not

16 the function of the court. *See United Steel Workers of America v. Phelps Dodge Corps.*, 865 F.2d

17 1539, 1542 (9th Cir. 1989).

18 **A.    Plaintiff's Excessive Force Claim (Takedown)**

19    Plaintiff alleges that VPD Defendants used excessive force in violation of the Fourth

20 Amendment when they "took me to the ground while I was restrained in handcuffs behind my

21 back which caused a bump on my head that officers claimed I caused[.]" Dkt. 19 at 9.

22 Defendants counter that Gillingham and Simmons were the only defendants to participate in the

23

24

REPORT AND RECOMMENDATION - 8

takedown and used reasonable force to restrain Plaintiff, who only became injured after banging his head on the plexiglass divider in Gillingham's vehicle. Dkt. 45 at 10.

In the Ninth Circuit, courts "analyze all claims of excessive force that arise during or before arrest under the Fourth Amendment's reasonableness standard[.]" *Coles v. Eagle*, 704 F.3d 624, 627 (9th Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 386 (1989)). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

> Factors for evaluating reasonableness include, but are not limited to: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resisted arrest or attempted to escape. Other relevant factors include the availability of less intrusive alternatives to the force employed, whether proper warnings were given and whether it should have been apparent to officers that the person they used force against was emotionally disturbed. Of all these factors, the "most important" one is whether the suspect posed an immediate threat to the safety of the officers or others.

*S.B. v. Cty. of San Diego*, 2017 WL 1959984, at *4 (9th Cir. May 12, 2017) (internal citations and quotations omitted).

Here, Gillingham and Simmons' use of force was reasonable because (1) Plaintiff was suspected of a violent domestic assault and was actively resisting arrest, and (2) Plaintiff suffered little to no injury from the takedown.

Viewing the facts in a light most favorable to Plaintiff, the evidence shows that Gillingham, Simmons, and Starbuck arrived after a 911 caller stated that Plaintiff held a knife to his girlfriend's throat and was pounding on the apartment door after the door was locked to prevent his return. Dkt. 48 at 4. When Starbuck initially interviewed Plaintiff's girlfriend, she stated that Plaintiff "pushed her in the chest," attempted to take her phone from her pants pocket,

REPORT AND RECOMMENDATION - 9

ripping her pants, and "put his hand in the doorway to keep her from closing the door." Dkt. 50 at 4. While speaking with Plaintiff's girlfriend, Starbuck observed that Plaintiff "was yelling at her not to say anything and if she told us that he touched her he would go to jail." *Id.* Gillingham's conversation with Plaintiff provided similar details. *See* Dkt. 48 at 4 (Plaintiff stated that he called his girlfriend a "bitch" and "took her phone from her to go through her messages," and that "he had pushed her near the door but not in an assaultive way but more like a 'don't go anywhere' way.").

      Plaintiff presents no evidence contradicting these facts, and indeed admits that officers arrived at the apartment "in response to allegations of an assault in which [he] was a suspect." Dkt. 19 at 7. These facts favor the Defendants. *See Oakry v. City of Tempe*, 629 F. Supp. 3d 974, 984 (D. Ariz. 2022) ("There is no dispute that Plaintiff was identified as the perpetrator in an assault. Although the crime was only charged as a misdemeanor, the crime at issue was nonetheless a serious offense characterized by violence, thereby supporting that the force used was reasonable"); *but see Kita v. City of Seattle*, 484 F. App'x 136, 138 (9th Cir. 2012) ("a reasonable fact-finder could find that the mere presence of a domestic dispute does not militate in Clay's favor, because Clay arrived at the scene after the domestic dispute was over, the couple was already separated, and Kita was not, we must assume, acting in a threatening manner.").

      Shortly after Starbuck returned and the officers placed Plaintiff under arrest, Plaintiff began actively resisting the officers' movement towards the patrol car. Gillingham, Simmons, Starbuck, and Brown (now having arrived and observing Plaintiff's arrest) all document and similarly characterize Plaintiff's struggle in their reports. Dkt. 48 at 1 (Plaintiff "started to throw his legs out and stop us from walking" and was screaming for his girlfriend); Dkt. 49 at 4 (Plaintiff "planted his feet" and "thrashed his legs about causing myself and Officer Gillingham

REPORT AND RECOMMENDATION - 10

to hold his entire bodyweight"); Dkt. 50 at 4 (Plaintiff was "becoming obviously agitated and turning on officers"); Dkt. 51 at 3 (Plaintiff "began to act erratically with cursing, crying, struggling arms and legs consistent with escape efforts."). Three of the four officers noted that Plaintiff attempted to headbutt Gillingham. Dkt. 49 at 8 at 1; Dkt. 49 at 4; Dkt. 50 at 4. Again, Plaintiff presents no conflicting evidence, and acknowledges that he "turned [his] head around to call" to his girlfriend while being escorted to the patrol car. Dkt. 19 at 7. Plaintiff's resistance indicates that the officers acted reasonably in taking him to the ground.

Further, the officers' takedown of Plaintiff was a "calculated and controlled" maneuver that resulted in no significant injury. Dkt. 51 at 3. The officers "did not observe injury or complaint of pain" from Plaintiff, *id*., and Simmons asked Plaintiff whether he was hurt, and Plaintiff responded that he was not. Dkt. 49 at 4. This fact favors Defendants. *Potis v. Pierce Cnty.*, No. C14-826-RBL, 2016 WL 1615428, at *1 (W.D. Wash. Apr. 22, 2016), at **10-12 (officer used reasonable force in bringing suspect to the ground, where suspect appeared likely to flee and the maneuver was "unlikely to cause serious bodily harm" and plaintiff was not injured).

Plaintiff's allegation that he suffered a minor injury resulting from the takedown would not change the reasonableness analysis under these facts. Moreover, a rational trier of fact could not find that the takedown caused his injury. Perhaps most harmful to Plaintiff's claim are photographs taken by the officers after the takedown (but before Plaintiff was in the vehicle) and again after Plaintiff was sedated and taken to the hospital. These photographs show that Plaintiff had only minor redness on his face after he was pushed to the ground and developed the more serious bump on his head after he "bash[ed] his head against the plexiglass that separates the passenger and driver compartment of the vehicle." Dkt. 48 at 5, 20; Dkt. 49 at 8-13. All three officers present, as well as the paramedics from AMR, reported that Plaintiff banged his head

REPORT AND RECOMMENDATION - 11

1  against the plexiglass partition. Dkt. 48 at 5; Dkt. 49 at 5; Dkt. 50 at 5; Dkt. 47 at 63. Aside from

2  his conclusory allegation, Plaintiff presents no further evidence to contradict these photographs,

3  thus it appears Plaintiff was uninjured after the takedown and the lump on his forehead was self-

4  inflicted when he repeatedly hit his head against the divider.

5        The largely undisputed evidence shows that Plaintiff was suspected of a domestic assault,

6  that he actively resisted arrest, that the officers used a controlled takedown method, and that

7  Plaintiff received minimal injuries from the takedown. Thus, Gillingham and Simmons used

8  reasonable force to effect Plaintiff's arrest. Accordingly, the Court recommends that summary

9  judgment as to this claim be granted in favor of Defendants.

### B.  Plaintiff's Due Process Claim (Forceful Injection of Sedative)

11        Plaintiff argues that Gillingham, Simmons, Starbuck, and paramedics from AMR ignored

12  Plaintiff's "coherent refusal" of medical attention and violated his Fourteenth Amendment rights

13  when they restrained him and injected him with a sedative against his will. Dkt. 19 at 8; Dkt. 57

14  at 1; *see Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (finding "a significant liberty

15  interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process

16  Clause of the Fourteenth Amendment"); *see also Cruzan v. Director, Missouri Dep't of Health*,

17  497 U.S. 261, 278 (1990) ("a competent person has a constitutionally protected liberty interest in

18  refusing unwanted medical treatment.").[2] Plaintiff does not possess an absolute right to refuse

19  medical attention but, rather, his liberty interest must be balanced "against the relevant state

---

[2] Plaintiff's claim may also be construed as a Fourth Amendment challenge to the injection as a "seizure" of Plaintiff's person, challenging both the restraint used to hold him down and the injection itself. The analysis — a test of objective reasonableness — is largely the same. *Anglin v. City of Aspen*, 562 F. Supp. 2d 1304, 1319 (D. Colo. 2008) ("Under either standard, the involuntary sedation of Plaintiff is a violation of his constitutional rights if it is not reasonably related to a legitimate purpose"). Under a substantive due process argument, Plaintiff further needs to show that use of the sedative "shock[s] the contemporary conscience." *Buckley v. Hennepin Cnty.*, 9 F.4th 757, 763 (8th Cir. 2021) (internal citations omitted).

REPORT AND RECOMMENDATION - 12

interests." *Haas v. Cnty. of El Dorado*, No. 2:12-CV-00265-MCE, 2012 WL 1414115, at *10 (E.D. Cal. Apr. 23, 2012) (internal citations omitted).

VPD Defendants argue they were entitled to rely on AMR's independent medical judgment in deciding to sedate Plaintiff and, in any event, that AMR's decision to sedate was reasonable as Plaintiff continued to actively resist arrest and damage Gillingham's patrol car. Dkt. 45 at 16-17. AMR submits that it was not acting under color of law when its employees sedated Plaintiff, and thus cannot be liable for constitutional violations under § 1983.

Undisputed evidence shows that Plaintiff continued to resist arrest once in the patrol car. Plaintiff threatened to spit on and attack officers and paramedics, hurt himself by bashing his head against the car's plexiglass divider, kicked the windows of the car causing approximately $800 in damage, and was able to slip out of a hobble restraint after only one minute. Dkt. 48 at 5; Dkt. 49 at 5; Dkt. 50 at 5; Dkt. 47 at 63-65. Here, the Court must balance Plaintiff's "liberty interests against the relevant state interests," including "the need for the government action in question, the relationship between the need and the action, the extent of harm inflicted, and whether the action was taken in good faith or for the purpose of causing harm." *Haas*, 2012 WL 1414115, at *10.

In doing so, the Court finds that the restraint and forceful use of a sedative on Plaintiff was reasonable under the circumstances "to ensure the safety of [Plaintiff] and the paramedics" during transport. Dkt. 45 at 17; *see Galli v. Rush*, No. 222CV00023APGNJK, 2023 WL 4636880, at *8 (D. Nev. July 19, 2023) (reasonable paramedic could believe that plaintiff, who "repeatedly stated he was dying before running from officers and paramedics down dark streets, presented a danger to himself or others"); *Buckley*, 9 F.4th at 763 ("paramedics were facing a medical emergency in which it was necessary to restrain the self-destructive Buckley and

REPORT AND RECOMMENDATION - 13

transport her to a hospital"); *but see Haas*, 2012 WL 1414115 (sedative and restraint not appropriate where plaintiff suffered a seizure but was not accused of a crime and was coherent, as there was only a "remote and speculative possibility" that plaintiff would hurt others if he walked or rode to the hospital without an ambulance). Accordingly, the Court recommends that summary judgment as to this claim be granted in favor of Defendants.

Because the Court finds that the use of a sedative was reasonable, the Court does not address VPD Defendants' arguments that they relied on the independent judgment of AMR's paramedics, Dkt. 45 at 16, or AMR's argument that it was not acting under color of state law when its employees sedated Plaintiff. Dkt. 63 at 1-5.

**C.      Plaintiff's Remaining Claims (Arrest, Search, and lack of *Miranda* warnings)**

Liberally construing the Amended Complaint, Plaintiff appears to allege additional claims challenging (1) the basis of his arrest; (2) Starbuck's search of his pockets; and (3) questioning by Gillingham and Simmons prior to his arrest without *Miranda* warnings. Dkt. 19 at 7. VPD Defendants argue that the first two claims are barred by *Heck* because of Plaintiff's underlying conviction, and that the third claim is barred by *Vega v. Tekoh*, 142 S. Ct. 2095 (2023). This Court agrees.

Under *Heck*, a Plaintiff cannot sue under § 1983 if his success would "'demonstrate' the invalidity of the earlier conviction or sentence[.]" *Beets v. County of Los Angeles*, 669 F.3d 1038, 1042 (9th Cir. 2011) (quoting *Heck*, 512 U.S. at 487). Here, any claim of unlawful arrest "is foreclosed by the existence of probable cause." Dkt. 45 at 8 (citing *Hart v. Parks*, 450 F.3d 1059, 1066 (9th Cir. 2006). The same is true for the officers' search of Plaintiff's pockets. A search incident to a lawful arrest is not limited to a simple pat-down and may "involve a relatively extensive exploration" of areas within the arrestee's immediate control, including "the arrestee's

REPORT AND RECOMMENDATION - 14

person and the inside pockets of the arrestee's clothing." *United States v. Williams*, 846 F.3d 303, 312 (9th Cir. 2016).

Lastly, Plaintiff's Fifth Amendment claim is foreclosed by *Vega*, 142 S. Ct. 2095 at 2107 (a *Miranda* violation cannot provide the basis for a § 1983 claim because *Miranda*'s "prophylactic purpose is served by the suppression at trial of statements obtained in violation of *Miranda* and by the application of that decision in other recognized contexts.").

**D.      Claims Against VPD**

Plaintiff also asserts his claims against VPD itself. *See* Dkt. 19 at 15 (seeking $100,000,000 from VPD "for participating in the forceful and therefore involuntary injection" of the sedative). But Plaintiff has not alleged, let alone provided evidence supporting, a claim under *Monell v. Dep't of Social Servs*, 436 U.S. 658 (1978). *See Levine v. City of Alameda*, 525 F.3d 903, 907 (9th Cir. 2008) (plaintiffs suing municipalities under § 1983 must allege a "policy, practice, or custom" amounting to deliberate indifference to the constitutional right). VPD is also an improper defendant because it is not a legal entity capable of being sued. *Lang v. Washington*, No. C20-5057 BHS, 2020 WL 6799021, at *2 (W.D. Wash. Nov. 18, 2020) ("a plaintiff must name the county or city itself as a party to the action, and not the particular municipal department or facility where the alleged violation occurred") (quoting *Bradford v. City of Seattle*, 557 F. Supp. 2d 1189, 1207 (W.D. Wash. 2008)).

**V.      CONCLUSION**

For the reasons set forth above, the Court finds that there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law and recommends that the Motions for Summary Judgment (Dkts. 45, 61) be granted in favor of Defendants.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on October 20, 2023, as noted in the caption.

Dated this 4th day of October, 2023.

Grady J. Leupold
United States Magistrate Judge

REPORT AND RECOMMENDATION - 16